IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CYNTHIA L.,

                    Plaintiff,

          v.                                    Civil Action No.
                                                3:20-CV-0617 (DEP)

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[1]

                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LACKMAN GORTON LAW FIRM         PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          HEATHER M. LaCOUNT, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

_____

[1]     Plaintiff's complaint named Andrew M. Saul, in his official capacity as the Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi took office as the Acting Social Security Commissioner. She has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2]  Oral argument was heard in connection with those motions on September 22, 2021, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench

_____

[2]     This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Defendant's motion for judgment on the pleadings is GRANTED.

2)      The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)      The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      September 29, 2021
            Syracuse, NY

3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CYNTHIA L.,

                    Plaintiff,

vs.                                        3:20-CV-617

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

-------------------------------------------------------x

               *DECISION* - September 22, 2021

               the HONORABLE DAVID E. PEEBLES

          United States Magistrate-Judge, Presiding


               <u>APPEARANCES</u>  (by telephone)

For Plaintiff:      LACHMAN, GORTON LAW FIRM
                    Attorneys at Law
                    1500 East Main Street
                    Endicott, NY 13761
                      BY:  PETER A. GORTON, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    15 New Sudbury Street
                    Boston, MA 02203
                      BY:  HEATHER MARY LaCOUNT, ESQ.


               *Eileen McDonough, RPR, CRR*
          *Official United States Court Reporter*
                    *P.O. Box 7367*
               *Syracuse, New York 13261*
                    *(315)234-8546*

1          THE COURT:  Let me begin by thanking counsel for

2     excellent, as usual, presentations, and it was very

3     informative, both the briefs and the oral arguments.

4          Plaintiff has commenced this proceeding pursuant to

5     42, United States Code, Sections 405(g) and 1383(c)(3) to

6     challenge a determination by the Acting Commissioner of

7     Social Security concluding that plaintiff was not disabled at

8     the relevant times and, therefore, is ineligible for the

9     benefits that she sought.  The background is as follows.

10         Plaintiff was born in February of 1974.  She is

11    currently 47 years of age.  Plaintiff was 42 years old at the

12    time of the alleged onset of disability on December 15, 2016.

13    Plaintiff stands approximately 5-foot 2-inches in height, and

14    has weighed at various times approximately 224 to 235 pounds.

15         Plaintiff has a GED.  While in school she attended

16    regular classes.  She also has an EMS certification, and took

17    some college classes aiming to be a medical assistant.  That

18    appears at page 283 of the Administrative Transcript.

19         Plaintiff lives in Port Crane, New York.  It's

20    unclear whether she still lives with her husband; there is an

21    indication they were separated in March of 2017.  That

22    appears at 592 of the Administrative Transcript.  She also

23    has a son age 20, and the son's girlfriend lives with her as

24    well as the son.  The girlfriend is 19 years old.

25         Plaintiff is left-handed.  Plaintiff drives but on

*Decision - 20-cv-617 - 9/22/2021*                    3

1   a limited basis; she does not drive at night and she always

2   has someone with her in the event that she experiences an

3   episode.

4           Plaintiff stopped working in January of 2017.  She

5   worked as a volunteer bookkeeper in December of 2017 for a

6   family friend.  She also worked in April and May of 2018 part

7   time driving a box truck and in an office setting.  Plaintiff

8   in the past has also worked as a customer service

9   representative in the cable business, a home health aide, a

10  gas station and grocery store cashier and customer service, a

11  recycle center clerk, a bus driver, a school bus driver, a

12  nursing home aide, a phlebotomist, and a tax preparer.  The

13  latter one was seasonal and some of those positions were part

14  time, others full time.

15          Physically, plaintiff suffers from fibromyalgia, at

16  least it has been diagnosed as such, although the

17  Administrative Law Judge noted that the diagnosis was not

18  supported by the requisite findings under the Commissioner's

19  regulations and ruling concerning fibromyalgia.  She suffers

20  from back and hip pain, vestibular disorder with migraine

21  headaches, which were described as cluster headaches, which

22  she experiences two to seven times a week.  She also suffers

23  from Mal de Debarquement Syndrome, which I understand from

24  one source is a rare and poorly understood disorder of the

25  vestibular system that results in phantom perception of

1   self-motion typically described as rocking, bobbing or

2   swaying.  That source indicates that the symptoms tend to be

3   exacerbated when a patient is not moving, for example, when

4   sleeping or standing still.  The primary symptom of I'm going

5   to call it MDD is the persistence of a sense of motion and

6   rocking.  It is noted that some MDD patients may experience

7   fatigue, mood changes and confusion.  It is also noted that

8   imbalance is a common complaint.  The plaintiff also suffers

9   from mild carpal tunnel syndrome, obesity, high blood

10  pressure, and hyperlipidemia.

11          Mentally, plaintiff experiences anxiety and

12  depression.  She has undergone regular counseling for her

13  condition and is prescribed medication.  She does not see a

14  psychiatrist, however.  She was hospitalized, according to

15  her, for three days for depression in 2013.  There are no

16  records of that hospitalization contained in the

17  Administrative Transcript.

18          Plaintiff has seen Dr. Amhed Alwan, a neurologist,

19  since October of 2016; and Dr. Joy Burke, a neurologist,

20  since December of 2018.  Her primary care provider is

21  Physician Assistant Thomas Jones, who she has seen at least

22  since January 2016.

23          Plaintiff has been prescribed various medications

24  including Inderal; Lexapro for her depression; Meclizine;

25  Zebeta; Amitriptyline; Cymbalta; Topamax; Zoloft; Valium;

1   Motrin 800 milligrams.  She has also tried Imitrex and

2   Fioricet.

3          In terms of activities of daily living, plaintiff

4   can cook, do dishes, clean, shop, does some driving as

5   indicated previously.  She can shower with help getting in

6   and out of the tub.  She dresses.  Her son does the laundry

7   for her.  She likes to crochet.  She goes to bingo.  She

8   engages in child care.  She has a one-year-old foster child.

9   It's unclear whether that still exists and for how long it

10  did.  She reads, watches television, goes out to dinner,

11  cares for her pets.  She can swim.  She attended a

12  recreational vehicle show.  Plaintiff is a former smoker, but

13  according to the record, quit several years ago.

14         Procedurally, plaintiff applied for Title II and

15  Title XVI benefits under the Act on January 11, 2017.  The

16  Commissioner notes that this was the seventh such

17  application, and that appears to be true from 254 to 255 of

18  the Administrative Transcript.

19         Plaintiff alleged an onset date of December 15,

20  2016, and at 283 claims disability based on vertigo,

21  fibromyalgia, anxiety, depression and palpitations.  A

22  hearing was conducted by Administrative Law Judge Paul D.

23  Barker, Jr. on February 22, 2019, to address plaintiff's

24  application for benefits.  On April 8, 2019, the

25  Administrative Law Judge issued an unfavorable decision,

1   which became a final determination of the Agency on April 7,

2   2020, when the Social Security Administration Appeals Council

3   denied plaintiff's request for review.  In doing so, it

4   rejected a medical source statement from Dr. Joy Burke dated

5   June 13, 2019, stating that it did not relate to the period

6   at issue.  That appears at page 2 of the Administrative

7   Transcript.  This action was commenced on June 3, 2020 and is

8   timely.  In his decision, ALJ Barker applied the familiar

9   five-step sequential test for determining disability.

10          He first noted that plaintiff was last insured on

11   December 31, 2020.  He then concluded that while plaintiff

12   had engaged in additional work since that date, she had not

13   engaged in anything that would be considered substantial

14   gainful activity, or SGA, since December 15, 2016.

15          At step two, the ALJ concluded that plaintiff

16   suffers from severe impairments that impose more than minimal

17   limitations on her ability to perform work-related functions,

18   including vestibular disorder with migraine headaches, MDD

19   Syndrome, anxiety disorder, and depression.  And when I say

20   MDD, it's not major depressive disorder, in this case it's

21   Mal de Debarquement Syndrome.

22          In doing so, the Administrative Law Judge rejected

23   other conditions as nothing severe enough to meet the

24   regulations, including obesity; carpal tunnel syndrome; right

25   cubital tunnel syndrome; high blood pressure; hyperlipidemia;

1   and fibromyalgia, which was rejected, as I indicated

2   previously, under SSR 12-2p.  He did note, however, that he

3   has considered the reported symptoms underlying the

4   fibromyalgia diagnosis.

5          At step three, Administrative Law Judge Barker

6   concluded that plaintiff's condition does not meet or

7   medically equal any of the listed presumptively disabling

8   conditions, specifically considering listings 2.07 related to

9   vestibular impairments, 11.00 and 11.02 related to migraines,

10  and 12.04 and 12.06 related to plaintiff's mental conditions.

11         The Administrative Law Judge next concluded that

12  plaintiff retains the residual functional capacity, or RFC,

13  notwithstanding her impairments to perform sedentary work

14  with additional limitations both addressing her physical

15  impairments and also her mental impairments.

16         With regard to the latter, the RFC provides that

17  plaintiff can understand, remember, and carry out simple

18  tasks but not at an assembly line rate.  She must not operate

19  motor vehicles and must never be exposed to unprotected

20  heights or moving unprotected machinery.

21         Applying that residual functional capacity at step

22  four, Administrative Law Judge Barker concluded that

23  plaintiff is incapable of performing her past relevant work.

24  Based on the testimony of a vocational expert, he detailed

25  all of the positions that plaintiff previously held.

*Decision - 20-cv-617 - 9/22/2021*                                    8

1        At step five, the Administrative Law Judge first

2   concluded that if plaintiff was capable of performing a full

3   range of sedentary work, a finding of no disability would be

4   directed by the Medical-Vocational Guidelines, or the Grids,

5   and specifically Grid Rules 201.28 and 201.21.  Based on the

6   testimony of the vocational expert who was presented with the

7   hypothetical that parallelled the residual functional

8   capacity finding, the vocational expert opined and the ALJ

9   found that plaintiff could perform available work in the

10  national economy, citing representative jobs, including a

11  document addresser, a call-out operator, and a surveillance

12  system monitor.

13       The Court's function in this case, as you know, is

14  extremely limited and the standard which I apply is very

15  deferential.  In *Brault versus Social Security Commissioner*,

16  683 F.3d 443 (2012), the Second Circuit noted that it is

17  extremely deferential, more so than the clearly erroneous

18  standard that we as lawyers understand.  In *Brault* the

19  Circuit made the observation that under this standard when a

20  fact is found by the Agency, it can be rejected only if a

21  reasonable factfinder would have to conclude otherwise.

22       And, of course, the standard which I apply is that,

23  A, correct legal principles must be applied, and B, the

24  resulting determination must be supported by substantial

25  evidence, defined as such relevant evidence as a reasonable

1    mind would find sufficient to support a conclusion.

2          In this case, plaintiff raises several contentions.

3    First, she challenges the refusal of the Appeals Council to

4    consider Dr. Burke's medical source statement.  Secondly, she

5    claims that the residual functional capacity finding does not

6    account for her limitations in work pace and attendance, and

7    that in finding to the contrary of the medical opinions, the

8    Administrative Law Judge substituted his lay opinion for

9    uncontested medical opinions and improperly interpreted their

10   medical evidence.  The third point is that there was improper

11   weight given to various medical opinions in the record,

12   including from Dr. Burke, Dr. Alwan, Physician Assistant

13   Jones, Dr. Jenouri, Dr. Slowik and Dr. Harding.  Fourth, the

14   plaintiff cites improper reliance on activities of daily

15   living and work attempts.  And fifth, argues that the RFC

16   does not accommodate plaintiff's propensity to dizziness.

17         First addressing the Appeals Council's decision

18   with regard to the medical source statement from Dr. Joy

19   Burke, that statement was given on June 13, 2019, shortly

20   after the Administrative Law Judge's decision in this case.

21   It is new evidence.  Under the regulations, and specifically

22   20 CFR Section 404.970(a)(5), to be considered evidence must

23   be material and new, must relate to the period on or before

24   the date of the Administrative Law Judge's decision, and

25   plaintiff must show a reasonable probability that the new

1   evidence would change the outcome.  And when I give citations

2   to the part 404, I will just note that there are parallel

3   provisions in the section governing the Title XVI claim, but

4   I won't give you both cites.

5          The Appeals Council opinion is at page 2 of the

6   Administrative Transcript.  And essentially -- not

7   essentially, verbatim, states as follows:  "You submitted

8   medical evidence from Dr. Joy Burke dated June 13, 2019 (3

9   pages).  The Administrative Law Judge decided your case

10  through April 8, 2018.  This additional evidence does not

11  relate to the period at issue.  Therefore, it does not affect

12  the decision about whether you were disabled beginning on or

13  before April 8, 2019."  Clearly, as I think the Commissioner

14  might concede, that is factually incorrect.  It's not

15  specifically stated in Dr. Burke's opinion what period it

16  relates to, but it by definition must relate to the period

17  prior to the ALJ's decision.

18         The larger question then is whether that error is

19  harmless or harmful.  In addressing that I focus on prong

20  three of the relevant test, whether there is a reasonable

21  probability that new evidence would change the outcome, and I

22  believe the answer is no.  Clearly Dr. Burke is a treating

23  source but her opinion is a check-box form, which the

24  Commissioner has argued is traditionally viewed as very weak

25  evidence.  There is really no discussion to support the

1   conclusions reached by Dr. Burke, and her conclusions are

2   consistent with those offered by Physician's Assistant Thomas

3   Jones, which were rejected by the ALJ.  The ALJ did consider

4   Dr. Burke's records and relied on Dr. Jenouri and

5   Dr. Harding.  I find, therefore, that while there was error,

6   it is not harmful error.

7           The second argument raised in connection with the

8   Social Security Appeals Council by the plaintiff is whether

9   there was an obligation for the Appeals Council to apply the

10  treating source rule and explain why Dr. Burke's opinion is

11  not being given controlling weight or explained what weight

12  was given, if any.  I had the same argument before me in

13  *Jessica W. versus Saul*, 2021 WL 797069, from March of this

14  year, 2021.  In that case I acknowledged the many cases that

15  require the Appeals Council even when it denies review to

16  apply the treating source rule and explain why I believe

17  those were misguided.  There was no appeal in the *Jessica W.*

18  case.  It is unfortunate, but given the circumstances, the

19  Commissioner limited appeals and plaintiff didn't appeal my

20  ruling, probably for good reasons.

21          So I'm not sure we'll get any guidance from the

22  Circuit on that question any time soon, but in any event, I'm

23  going to follow *Jessica W.* and say, and for the reasons

24  stated therein, the Appeals Council review does not have

25  obligation to apply the treating source rule to

1   after-acquired or after-submitted medical evidence from the

2   treating source.

3           Turning to the weight of the medical evidence and

4   focus, of course, on work pace and attendance.  This relates,

5   of course, to the residual functional capacity finding, or

6   RFC, represents a finding for the range of tasks a plaintiff

7   is capable of performing notwithstanding her impairments.

8   Ordinarily an RFC represents the claimant's maximum ability

9   to perform sustained work activities in an ordinary setting

10  on a regular and continuing basis, meaning eight hours a day

11  for five days a week, or an equivalent schedule.  Of course,

12  an RFC determination is informed by consideration of all of

13  the relevant medical and other evidence and must be supported

14  by substantial evidence.

15          In this case there are two opinions given by

16  Dr. Burke, who I believe is properly regarded as a treating

17  source.  On December 18, 2015, Dr. Burke stated, "I think

18  she," meaning the plaintiff, "is able to return to work,

19  sedentary job would be best, and perhaps with flexible hours

20  or working from home ideally."  That appears at 604 and I

21  think it also appears at 822 of the Administrative

22  Transcript.

23          That opinion partially supports the residual

24  functional capacity finding.  It certainly doesn't state that

25  it is medically necessary that the plaintiff would have

1   flexible hours and/or work from home.  The more difficult

2   question concerns, and the Administrative Law Judge discussed

3   this on page 22 and 23, and found that it generally supports

4   the conclusion that the plaintiff could sustain full-time

5   employment at the sedentary exertional level.

6          The second opinion given by Dr. Burke, as I

7   previously indicated, came on June 13, 2019.  It appears at

8   pages 36 and 37 of the Administrative Transcript.  It is a

9   check-box form.  It contends the plaintiff would be off task

10  more than 33 percent of the day and absent more than four

11  days a month.

12         Dr. Burke, of course, is a treating source.  This

13  case is governed by the former regulations.  Under those

14  regulations the treating physician's opinion regarding the

15  nature and severity of an impairment is entitled to

16  considerable deference provided it is supported by medically

17  acceptable clinical and laboratory diagnostic techniques and

18  is not inconsistent with other substantial evidence.  The

19  treating source opinion is not controlling, however, if it is

20  contrary to other substantial evidence in the record,

21  including the opinions of other medical experts.

22         And, of course, where there are conflicts in the

23  form of contradictory medical evidence, the resolution is

24  properly entrusted to the Commissioner*.  Veino verses*

25  *Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  Dr. Burke's

1   opinion, of course, as I indicated, it came after the

2   Administrative Law Judge's decision.  It was not addressed,

3   therefore, in the ALJ's decision.  And I've already concluded

4   that it is weak evidence and would likely not change the

5   outcome in this case.

6           The second medical opinion of record comes from

7   Dr. Alwan, and that is from January 2, 2019, at pages 334 and

8   335 of the Administrative Transcript.  Again, a check-box

9   form, finding that plaintiff would be off task more than 10

10  but less than 15 percent, and absent two days per month.

11  That was discussed at page 23 of the Administrative Law

12  Judge's decision.  The opinion was given limited weight.  The

13  reasons cited were, one, the neurology records do not

14  indicate she had any significant attention or concentration

15  issues; two, she reported notable improvement in dizziness

16  and migraine symptoms at her neurology visits with some

17  medication adjustments and vestibular therapy; and third,

18  although she reported she could not sustain part-time work,

19  she also reported caring for a one-month-old baby.  Being a

20  check-box form, this is entitled to very little weight.

21          The Administrative Law Judge did recognize

22  Dr. Alwan as a neurologist and explained the weight being

23  given.  I believe the explanation is proper and no reasonable

24  factfinder -- I cannot say a reasonable factfinder would have

25  to credit Dr. Alwan's opinions.

1        The third opinion is given by the Physician

2   Assistant Thomas Jones from March 22, 2019.  It appears at

3   883 and 844 of the record, check-box form.  Plaintiff would

4   be, according to Physician Assistant Jones, off task more

5   than 33 percent of the day and absent more than four days per

6   month.  Again, check-box form, weak.  It is discussed at

7   page 23 of the Administrative Law Judge's decision.  First of

8   all, as a Physician's Assistant, Mr. Jones' opinions are not

9   entitled to controlling weight as he is not an acceptable --

10  under the former regulations not an acceptable medical

11  source.  The reasons cited are explained in the second full

12  paragraph at page 23, and I'm unable to conclude that a

13  reasonable factfinder would have to credit PA Jones'

14  opinions.

15        Next opinion in the record is from Examining

16  Physician Dr. Gilbert Jenouri from March 16, 2017.  It

17  appears at 583 through 586 of the Administrative Transcript.

18  In his opinion Dr. Jenouri concluded that plaintiff has mild

19  to moderate restriction with walking, standing long periods,

20  bending and stair climbing.  Also the claimant is restricted

21  from driving and operating heavy machinery.  This is

22  consistent with the RFC finding.  Dr. Jenouri's opinion is

23  discussed at page 22 of the Administrative Transcript and

24  given significant weight.  Dr. Jenouri did not opine one way

25  or the other on the question of off task or absence.

1              The next opinion of record is Dr. Amanda Slowik, an

2    examining psychologist.  It's from March, 16, 2017.  It

3    appears at 589 to 593 of the Administrative Transcript.  In

4    the medical source statement, significantly Dr. Slowik

5    concludes that the claimant's ability to sustain an ordinary

6    routine is moderately to markedly limited.  That's at

7    page 592.  Dr. Slowik's opinion is discussed at page 23 of

8    the Administrative Law Judge's decision.  The opinion is

9    given partial weight based on the fact that according to the

10   ALJ, the examination and other evidence do not support more

11   than moderate limitations in any area of medical functioning.

12   He cites claimant's ability to attend medical appointments

13   and therapy, perform household chores, drive at times, care

14   for children, perform some work activity, and foster a

15   one-month-old baby.  Again, I think this is an appropriate

16   explanation and I am not able to say that a reasonable

17   factfinder would have to conclude otherwise.

18              The last opinion comes from Dr. T. Harding, a state

19   agency consultant who did not examine the plaintiff but did

20   review records that were available at the time.  It was given

21   on March 28, 2017 by Dr. T. Harding, and it appears at 2A and

22   4A of the Administrative Transcript.  The mental health

23   residual functional capacity concludes by stating, "Based on

24   the objective evidence, the claimant retains the ability to

25   perform the four basic demands of unskilled work on a

1  sustained basis and disability is therefore denied."  That's

2  at page 115.

3          In the worksheet, which of course under the POMS is

4  not necessarily controlling, Dr. Harding concluded that

5  plaintiff is moderately limited in the ability to perform

6  activities within a schedule, maintain regular attendance,

7  and be punctual within customary tolerances.  That's at

8  page 114.  I believe the discussion of Dr. Harding's opinion,

9  which appears at page 24, where he gives the opinion

10  significant weight, is proper.  I would have liked to have

11  seen a little more fulsome discussion but, nonetheless, I

12  believe that it generally supports and provides substantial

13  evidence necessary to support the residual functional

14  capacity finding.

15          As I reiterate, it is for the Administrative Law

16  Judge to weigh conflicting opinions under *Veino*.  And I also

17  note, as the Commissioner correctly argues, the RFC doesn't

18  exactly coincide with any one medical opinion, but that is

19  not a basis to conclude that is erroneous, under *Matta versus*

20  *Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013.)

21          I don't believe that the conclusion that plaintiff

22  cannot sustain work being on task and not absent more than

23  one time per week is uncontradicted.  If it is

24  uncontradicted, I appreciate the Commissioner's invitation

25  for me to explain for the Second Circuit why they're wrong;

*Decision - 20-cv-617 - 9/22/2021*                      18

1    however, since the Second Circuit appears to continue to

2    apply the overwhelmingly compelling standard, I am going to

3    defer and decline, respectfully, the invitation by the

4    Commissioner to educate the Circuit.

5           But I find that even if, even if the opinions

6    regarding absenteeism and off task, off-task-ness, if that's

7    a word, are uncontradicted, I find that the explanation given

8    is overwhelmingly compelling for discounting those opinions.

9           So, in conclusion, I find that correct legal

10   principles were applied, substantial evidence supports the

11   Administrative Law Judge's decision.  I will grant judgment

12   on the pleadings to the defendant and will order dismissal of

13   plaintiff's complaint.

14          Thank you both.  Have a good afternoon.

15               *                *                *

16

17

18

19

20

21

22

23

24

25

*Decision - 20-cv-617 - 9/22/2021*                    19

1

2                     C E R T I F I C A T I O N

3

4         I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

5    Realtime Court Reporter, in and for the United States

6    District Court for the Northern District of New York,

7    do hereby certify that pursuant to Section 753, Title 28,

8    United States Code, that the foregoing is a true and correct

9    transcript of the stenographically reported proceedings held

10   in the above-entitled matter and that the transcript page

11   format is in conformance with the regulations of the

12   Judicial Conference of the United States.

13

14

15

16   _____

17                     EILEEN MCDONOUGH, RPR, CRR
                        Federal Official Court Reporter
18

19

20

21

22

23

24

25